IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM M.[1],

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

3:17-cv-00536-PK

OPINION AND ORDER

---

PAPAK, Magistrate Judge:

William M. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). This court has jurisdiction over Plaintiff's action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ.

---

[1] In the interest of privacy, this opinion uses only the first name and last name initial of the non-governmental party or parties in this case.

Page 1 - OPINION AND ORDER

P. 73 and 28 U.S.C. § 636(c). For the reasons that follow, the Commissioner's decision is AFFIRMED.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 404.1520(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge ("ALJ") considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 404.1520(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(c). The ability to perform basic work activities is defined as "the abilities

Page 2 - OPINION AND ORDER

and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482 U.S. at 153-54. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Id.*, *quoting* Social Security Ruling ("SSR") 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 404.1520(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and

continuing basis,[2] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 404.1545(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g). If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566. A claimant will be found entitled to benefits if the Commissioner fails to

---

[2] "A 'regular and continuing basis' means 8 hours a day for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 LEXIS 5 (July 2, 1996).

meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

## LEGAL STANDARD

A reviewing court must affirm an ALJ's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id., quoting Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id., citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), *citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## SUMMARY OF ADMINISTRATIVE RECORD

Plaintiff was born in March 1972. Tr. 199. Although Plaintiff was a half-credit short of completing high school and did not complete his GED, he completed two years of automotive technology training at a community college. Tr. 45, 204. He worked as an auto body repairman from 1994 until 2009, when he was injured in a motor vehicle accident. Tr. 47, 204. Plaintiff made two unsuccessful attempts to return to auto body repair work in 2011 and 2012. Tr. 54-55, 204.

Plaintiff protectively filed an application for DIB on April 16, 2013, alleging disability due to mid- to- low-back problems, right hip and right leg problems, right foot drop, and chronic pain. Tr. 173-74, 203. His application was denied initially and upon reconsideration. Tr. 96, 109. On July 20, 2015, Plaintiff testified at a hearing before an ALJ. Tr. 41-57. During Plaintiff's testimony, the ALJ determined that Plaintiff might have undocumented mental impairments and continued the hearing until after Plaintiff underwent a neuropsychological screening. Tr. 56. A second hearing was held on November 10, 2015. Tr. 58-73. Plaintiff and a vocational expert ("VE") testified. On November 25, 2015, the ALJ issued a decision finding Plaintiff not disabled. Tr. 20-40. The Appeals Council denied Plaintiff's request for review on February 23, 2017, making the ALJ's opinion the final decision of the Commissioner. Tr. 1-7. Plaintiff timely filed his request for review by the district court.

## SUMMARY OF ALJ FINDINGS

At step-one of the five-step sequential evaluation process, the ALJ found that Plaintiff

had not engaged in substantial gainful activity from the alleged onset date of January 1, 2009[3] through the date last insured, June 30, 2013. Tr. 25. At step-two, the ALJ found that, through the date last insured, Plaintiff had severe impairments of degenerative disc disease, peroneal nerve injury, and cognitive disorder. *Id.*

At step-three, the ALJ determined that none of Plaintiff's impairments met or equaled any of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1. Tr. 25-26. The ALJ therefore determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that:

> claimant could occasionally climb ramps and stairs, climb, stoop, crouch, kneel, and crawl. He could not climb ladders, ropes, or scaffolds. He could not balance on narrow beams or work at unprotected heights. He is limited to entry-level work.

Tr. 27.

At step-four, the ALJ found that Plaintiff was unable to perform his past relevant work as an auto body repairman. Tr. 33. At step-five, based on the testimony of the VE, the ALJ found that Plaintiff was able to perform the jobs of cashier and small products assembly, both of which existed in significant numbers in the national economy. *Id.*

## ANALYSIS

Plaintiff argues the ALJ: (1) erred at step five by finding Plaintiff could perform the jobs of cashier and small products assembler; and (2) erred by failing to consider medical records post-dating Plaintiff's date last insured.

---

[3] In the ALJ's opinion and the parties' briefs before the court, January 1, 2009 is recognized as the alleged onset date of disability. The Court notes, however, that at the November hearing, Plaintiff amended his onset date to May 9, 2009, which the ALJ appeared to accept. Tr. 25, 61-62.

Page 7 - OPINION AND ORDER

I.  **Step Five**

A.  **RFC Limitation to Entry-level Work and Reasoning Level 3**

Plaintiff argues that the ALJ erred by failing to resolve an apparent conflict between the Dictionary of Occupational Titles ("DOT") and the VE's testimony. Specifically, Plaintiff argues that there is an apparent conflict between the RFC limitation to entry-level work and the DOT rating of "Reasoning Level 3" for the job of cashier.

Generally, occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. SSR 00-4p at *4, 2000 SSR LEXIS 8. An ALJ has a duty to inquire further where a conflict between the DOT and VE's testimony is "obvious and apparent." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017). "When there is an apparent conflict between the vocation expert's testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle – the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). Before an ALJ may rely on a VE's testimony to make a disability determination, the ALJ must reconcile the apparent conflict by asking the VE to explain, "in some detail, why there is no conflict between the DOT and the applicant's RFC." *Lamear*, 865 F.3d at 1205. The duty to ask follow-up questions is fact-dependent, and "the more obscure the job, the less likely common experience will dictate the result." *Id.*

At the November hearing, the ALJ posed a series of hypothetical questions asking the VE to assume a person of Plaintiff's age, education, and work experience, capable of performing light work who can occasionally climb, stoop, crouch, kneel, and crawl, but should not climb ladders,

ropes, or scaffolds and should not balance or work at unprotected heights. Tr. 70. The VE testified that such a person could perform the jobs of "assembler of small products" and "cashier," both of which are classified by the DOT as light work, with a specific vocational preparation ("SVP") of "2." Tr. 70-71. The VE further testified that neither of these jobs would be eliminated if the hypothetical individual were restricted to entry-level work. Tr. 71. No other questions suggesting mental limitations were posed to the VE. The VE testified that there were no distinctions between his testimony and the relevant portions of the DOT. Tr. 72.

One way jobs are characterized by the DOT is through a general educational development scale (GED) which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appendix C. The GED is composed of three divisions: (1) Reasoning Development; (2) Mathematical Development; and (3) Language Development. DOT, Appendix C. Reasoning Development levels range from "1" to "6," with Level 1 representing the least complex requirements and Level 6 representing the most complex. *Id.*; *Rounds v. Comm'r Social Sec. Admin.*, 807 F.3d 996, 1002-03 (9th Cir. 2015). Reasoning Level "3" requires the ability to

> [a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

*Id.*

The DOT does not define the term "entry-level," and it is not used to describe requirements for defined jobs. The only place where the term "entry-level" appears in the DOT is in Appendix D: "How to Use the DOT for Placement," which describes entry-level workers as often having "little or no training, education or job experience geared to specific occupational

Page 9 - OPINION AND ORDER

requirements." DOT, Appendix D, (4) "Assisting Special Applicant Groups Entry Level Workers."

Other dictionaries describe "entry-level" in similar terms. For example, Merriam -Webster[4] defines "entry-level" as "of or being at the lowest level of a hierarchy." Likewise, Dictionary.com[5] defines "entry-level" as "of relating to, or filling a low-level job in which an employee may gain experience or skills," and the English Oxford Living Dictionaries[6] defines it as "at the lowest level in an employment hierarchy." Similarly, the Cambridge Dictionary[7] defines "entry-level" as "at or relating to the lowest level of an organization, type of work, etc." while the Oxford English Dictionary[8] defines it as "located at the bottom level of a (perh. implicit) scale or hierarchy; designating or relating to a job, academic course, etc., available to or suitable for those people with little relevant experience; of a person: entering employment, etc., at the lowest level of a scale or hierarchy, suitable for those with little relevant experience." Therefore, "entry-level" indicates a lack of experience, skill, or training.

In the context of Social Security disability determinations, "unskilled work" is defined as

---

[4]Merriam -Webster, https://www.merriam-webster.com/dictionary/entry-level (last visited June 18, 2018).

[5]Dictionary.com, http://www.dictionary.com/browse/entry-level?s=t%3B (last visited June 18, 2018).

[6] English Oxford Living Dictionaries, https://en.oxforddictionaries.com/definition/entry-level (last visited June 18, 2018).

[7]Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/entry-level (last visited June 18, 2018).

[8]Oxford English Dictionary, http://www.oed.com/view/Entry/249639?redirectedFrom=entry-level#eid (last visited June 18, 2018).

OPINION AND ORDER - 10

"work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568. Thus, similar to an entry-level job, "unskilled work" does not require prior experience, skills, or training to perform the job. Arguably, a limitation to "unskilled work" is more restrictive than a limitation to entry-level work: entry-level work does not necessarily connote jobs requiring little or no judgment, or simple duties that can be learned in a short period of time. However, in the context of the ALJ's RFC discussion, which appears to incorporate some degree of mental limitation based on the consultative neuropsychological assessment report of Daryl Birney, Ph.D. (*see* tr. 32, 581-83), "unskilled work" appears to be the closest parallel to the "entry-level" work limitation. Thus, the question becomes whether an RFC limitation to "unskilled" work is in apparent conflict with the DOT definition of cashier.

In the DOT, a job with an SVP of 1 or 2 is considered unskilled work. SSR 00-4p, 2000 SSR LEXIS 8 at *7-8. As noted above, cashier is an unskilled, SVP 2 job. Consequently, to the extent the RFC limitation to entry-level work is consistent with a limitation to unskilled work, and considering the job of cashier is unskilled, there is no apparent conflict between the DOT job of cashier and the RFC limitation to entry-level work.

In arguing that the requirements of Reasoning Level 3 conflict with the RFC limitation to entry-level work, Plaintiff urges that this case is analogous to *Zavalin*, 778 F.3d 842. In *Zavalin*, the court held that there was an "apparent conflict between the residual functional capacity to perform simple repetitive tasks, and the demands of Level 3 Reasoning." *Id.* at 847. A limitation to unskilled or entry-level work is distinguishable, however, from a limitation to "simple repetitive tasks." *See Garcia v. Comm'r Social Sec.*, 768 F.3d 925, 928-29 (9th Cir. 2014).

OPINION AND ORDER - 11

Significantly, the RFC at issue in *Zavalin* did not include a limitation to entry-level or unskilled work, and thus the court's holding offers little guidance as to whether or not a limitation to entry-level work conflicts with Reasoning Level 3.

In his reply brief, Plaintiff argues that the term "entry-level" should be interpreted to include an expansive understanding of Plaintiff's mental limitations. Alternatively, Plaintiff argues that the RFC is flawed if the limitation to "entry-level" work does not incorporate *all* of the limitations suggested by Dr. Birney's assessment. Pl.'s Reply Br. 2, ECF No. 20. However, Plaintiff did not challenge the RFC; instead, he challenged the ALJ's step five finding alleging an unresolved conflict between the RFC limitation to entry-level work and DOT Reasoning Level 3. But, even if Plaintiff's argument could be read to assert error in the RFC, the issue was raised too late, and the Court cannot consider it. Pl.'s Reply Br. 2, ECF No. 20.; *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

Accordingly, there is no apparent conflict between the RFC limitation to entry-level work and Reasoning Level 3. Therefore, the ALJ did not err at step five by finding Plaintiff could perform work as a cashier despite his limitations.

### B. Jobs that Exist in Significant Numbers

Plaintiff argues that the ALJ erred by finding the job of small products assembler is a job that exists in significant numbers the national economy. The Commissioner does not respond to this argument.

As noted above, in response to the ALJ's first hypothetical question, the VE identified the job of small products assembler. Tr. 70. The VE testified that there were 1,231 small products

assembler jobs nationally and 50 jobs in the state of Oregon. *Id.* The ALJ, therefore, included the job of small products assembler in his step five findings as a job that Plaintiff could perform despite his limitations and that exists in significant numbers in the national economy. Tr. 34.

"[A] job that is rare or generally unavailable to the claimant due to her limitations cannot be held to exist in significant numbers." *Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012). Although courts have declined to decide what the floor is for a "significant number of jobs," the *Beltran* court found that neither a regional number of 135 jobs nor the national number of 1,680 jobs met the burden. *Beltran*, 700 F.3d at 388-89. Here, where the numbers are even smaller, it follows that the job of small products assembler does not exist in significant numbers in either the national or local economy. Thus, the ALJ erred.

The court cannot reverse an ALJ's decision, though, based on an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). An error is harmless when it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[T]he burden of showing that an error is harmful, normally falls upon the party attacking the agency's determination." *Molina*, 674 F.3d at 1111, quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Here, since the ALJ identified another job (cashier) that exists in significant numbers in the national economy, the error was harmless.

## II.     Post-Date Last Insured Medical Records

Plaintiff argues that the ALJ erred by failing to consider medical records generated after Plaintiff's date last insured ("DLI"). The Commissioner points out that the ALJ considered *some* post-DLI evidence, specifically Dr. Birney's 2015 mental assessment, and the December 2013 opinion (and corresponding treatment records) of certified physician's assistant, William Dennis-

Page 13 - OPINION AND ORDER

Leigh. Any error resulting from the ALJ's failure to consider the remaining post-DLI medical evidence, the Commissioner argues, was harmless because those records did not show greater limitations than those assessed by the ALJ. After a careful review of the entire record, the Court agrees that the error was harmless.

In order to qualify for DIB benefits, a claimant must establish the he became disabled prior to his date last insured. 42 U.S.C. § 423. In making the disability determination, the ALJ must "consider all available evidence." *Id.* "All available evidence" includes evidence that post-dates a claimant's DLI. *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) ("medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition"). Here, however, the ALJ noted that treatment records in exhibits 12F through 15F and 19F, which dated from at least one year after Plaintiff's last date insured, were not considered. Tr. 32. This was error.

After summarizing the medical records and his reasons for giving limited weight to the December 2013 opinion of Mr. Dennis-Leigh, the ALJ concluded that:

> when viewed longitudinally, the undersigned finds that the medical evidence of record generated between the claimant's alleged onset date and his date last insured does not objectively describe[] symptoms or limitations so severe as to preclude the claimant from full-time work activity. The notes show [his] functioning improved after the procedure on [his] peroneal nerve. Further, he reported improvements in his pain with medication, and he engaged in activities such as hiking with his brother and walking for exercise.

Tr. 31.

Plaintiff argues that had the ALJ reviewed the post-DLI records, he would have been aware that Plaintiff was diagnosed with post-traumatic osteoarthritis in both knees in September

2015, which would have triggered the ALJ's duty to consider whether Plaintiff's knee pain was a severe impairment at step two. In support, Plaintiff notes that he was treated for knee pain with a TENS unit prior to his DLI, and that the ALJ failed to discuss knee pain at all.

At step two, a physical impairment "must be established by objective evidence from an acceptable medical source." 20 C.F.R. § 404.1521. For claims filed before March 27, 2017, an "acceptable medical source" does not include a licensed physician assistant. 20 C.F.R. § 404.1502. However, even if that were not the case, Plaintiff could not have established a severe impairment of his knees.

As the Commissioner points out, the only evidence of Plaintiff's pre-DLI knee pain appears to be an isolated treatment note from June 2011 indicating that Plaintiff's knee pain responded well to treatment with a TENS unit. Tr. 521. Post-DLI records show that Plaintiff reported bilateral knee pain in September 2014, but the corresponding physical exam by Alberto Rodriguez, PA-C indicated no knee abnormalities. Tr. 553-54. Plaintiff's September 2015 "diagnosis" of post-traumatic osteoarthritis of both knees was not explained by corresponding physical exam notes or references to objective testing such as imaging; instead, the record only contains a chart note by Kimberly Lovato, PA-C indicating that Plaintiff's diagnosis was "updated" to include post-traumatic osteoarthristis in both knees. Tr. 610-611. In sum, neither pre- nor post-DLI records meet the threshold requirements to establish knee pain as a severe impairment supported by objective medical evidence from an acceptable medical source. Accordingly, the ALJ's failure to consider the post-DLI records of knee pain was harmless. *Stout*, 454 F.3d at 1055 (9th Cir. 2006).

As for the remaining post-DLI records, Plaintiff does not specify at which step or steps in

Page 15 - OPINION AND ORDER

the ALJ's analysis consideration of the post-DLI medical records would have required a different determination. Rather, Plaintiff argues that the post-DLI records that the ALJ failed to consider "support the consistency and progressive nature of Plaintiff's impairments." Pl.'s Opening Br. 16, ECF 15. Plaintiff does not, however, argue that these records controvert the ALJ's interpretation of pre-DLI records.

Plaintiff argues that a 2015 MRI revealing "very similar" mild abnormalities to a 2010 MRI "bolsters" the 2010 MRI assessment and "demonstrates that Plaintiff's neuroforaminal encroachment and disc bulge were lasting," but does not argue that these images show greater impairment than that found by the ALJ. *Id.*; *see* tr. 560. Contrary to Plaintiff's assertion, the fact that Plaintiff's mild abnormalities were substantially unchanged from 2010 to 2015 could reasonably be construed to support the ALJ's interpretation of the record and ultimate nondisability finding. Moreover, at the July 2015 hearing, Plaintiff testified that his condition was about the same as it had been when he filed his DIB application April 2013. Tr. 56. Indeed, Plaintiff acknowledges that the post-DLI records "simply establish that the Plaintiff's impairments continued beyond Plaintiff's last date insured, and do not establish harmful error separately." Pl.'s Reply Br. 7. Notwithstanding this acknowledgment, Plaintiff urges that the post-DLI records raise doubts as to the "validity" of the ALJ's consideration of the record as a whole. Pl.'s Reply Br. 7. In short, Plaintiff suggests a nebulous alternative interpretation of the record but fails to show how the post-DLI evidence rebuts the ALJ's findings. This is insufficient to show harmful error. *Magallanes*, 881 F.2d at 750.

In sum, Plaintiff failed to demonstrate how the ALJ's error was consequential to the nondisability determination. Accordingly, the error was harmless. *Stout*, 454 F.3d at 1055.

## CONCLUSION

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is free of harmful legal error supported by substantial evidence and is AFFIRMED.

Dated this 27th day of June, 2018.

Honorable Paul Papak
United States Magistrate Judge